

DA 10-0050

## IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2010 MT 265N

IN RE THE MARRIAGE OF

MAGGIE RAE BROWN,

      Petitioner and Appellee,

   and

RICHE ALLEN HOLLAND,

      Respondent and Appellant.

APPEAL FROM:    District Court of the Eleventh Judicial District,
In and For the County of Flathead, Cause No. DR 08-568(B)
Honorable Katherine R. Curtis, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

         George B. Best, Attorney at Law, Kalispell, Montana

      For Appellee:

         David F. Stufft, Attorney at Law, Kalispell, Montana

Submitted on Briefs:  November 17, 2010

Decided:  December 14, 2010

Filed:

_____
Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(d)(v), Montana Supreme Court 1996 Internal Operating Rules, as amended in 2006, the following memorandum decision shall not be cited as precedent. It shall be filed as a public document with the Clerk of the Supreme Court and its case title, Supreme Court cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Appellant Riche Allen Holland (Holland) appeals from the District Court's order dividing the parties' marital estate and adopting a parenting plan that provides primary custody to Appellee Maggie Rae Brown (Brown). We affirm.

¶3 Holland and Brown established a common law marriage in approximately 1994, and maintained that relationship until their separation in approximately August 2008. The parties had two minor children during the marriage. Holland is self-employed as the owner and operator of Big Sky Curbing in Eureka, Montana. Maggie is employed as a part-time employee for the United States Postal Service (USPS) in Kalispell, Montana. Maggie began working with USPS in 2004. She commuted from her home in Eureka to Kalispell until approximately 2006, when she rented a house in Kalispell. Maggie purchased a house in Kalispell in June 2008. The parties separated in August 2008, and Brown filed this action for dissolution in October 2008.

¶4 A fire consumed the house owned by Holland and Brown, along with their personal belongings, on February 1, 2009. The District Court ordered Holland to deliver for deposit into his attorney's trust account all checks that he received from Safeco Insurance Company

2

for the fire loss. Holland complied with respect to a check for $119,195.48. Holland testified under oath that he received only this one check. Holland later testified under oath that he received only one other check for an amount of $8,690. Brown discovered through a subpoena issued to Safeco Insurance Company shortly before trial, however, that Holland had received additional payments of $118,831.33.

¶5 Holland testified that he had returned to Safeco Insurance Company a check for $61,695.83 because the personal property destroyed and covered by that check had been owned 99% by his girlfriend, Jodi Weatherill (Weatherill). Weatherill had moved into the house in Eureka with Holland shortly after the parties separated. Weatherill testified at trial, however, that she had not participated in making a claim to Safeco for her personal property and had not known that Holland had received any money from Safeco Insurance Company that would have represented the value of her personal property destroyed in the fire.

¶6 The District Court found that Holland had not been forthcoming concerning many aspects of his finances and the parties' assets and debts. For example, the court cited the fact that a subpoena duces tecum issued to Holland's bank revealed that he had completed two recent financial statements. The first statement, dated January 20, 2009, had been filed just ten days before Holland had filed discovery responses in which he stated that he had not prepared a recent financial statement. The other financial statement was dated June 4, 2009. Holland testified that the values reflected on these financial statements had not been provided by him, but rather, that his banker had completed the forms, including inserting all the values for the various assets, debts, income and expenses. Holland conceded, however,

3

that some of the writing on the January 20, 2009, financial statement was his, and that he may have provided information to the banker regarding his income.

¶7 Holland's banker testified regarding the bank's policy that the customer, by signing and submitting a financial statement, represents that the document is true and correct, and that the bank and its internal auditors could rely upon the accuracy of the financial statement signed and submitted by a customer. The banker further testified that he had based the $100,000 valuation of Holland's business on the June 4, 2009, financial statement, and upon the gross receipts reflected on the 2008 income tax return that Holland had provided. The court valued Big Sky Curbing at $100,000.

¶8 The court further determined that the parties had a total marital debt of $121,702.71. From this amount, the court deducted $14,709.70 that Holland had accrued after the parties had separated when he had purchased a 2003 Hummer for Weatherill. The court also deducted $18,182.70 that reflected the value of a 2003 Chevrolet Silverado pickup truck that the parties had owned. Holland testified that he had sold his truck to a friend, and that the debt would be paid when the friend sells his other vehicle. These determinations left a pre-separation marital debt of $88,810.31. The court allocated responsibility for the majority of this pre-separation marital debt to Holland.

¶9 The court determined that Brown should be the primary custodial parent. This arrangement initially would have required the parties' two children to move from Eureka to Kalispell. Brown ultimately decided, however, that she would move back to Eureka to avoid

problems with the children. Brown would then commute to Kalispell to her job with USPS. Holland appeals.

¶10    Holland argues on appeal that the court abused its discretion when it failed to consider the tax implications and liquidation costs associated with the potential liquidation of Big Sky Curbing. He contends the District Court abused its discretion when it allocated over 80% of the parties' marital debt to him. He also argues the District Court abused its discretion when it included personal property belonging to Weatherill in the parties' marital estate. Finally, Holland argues that the court failed to consider the best interests of the minor children when it adopted the parenting plan.

¶11    We review a district court's distribution of property in a marriage dissolution case to determine whether the findings of fact are clearly erroneous; if the findings of fact are not clearly erroneous, we affirm unless the district court abused its discretion. *In re Howard*, 2008 MT 351, ¶ 17, 346 Mont. 312, 195 P.3d 812. We review a district court's discretionary decision in custody matters to determine whether substantial evidence supports the decision; we will not reverse unless the court has abused its discretion. S*ian v. Kooyer*, 2010 MT 178, ¶ 5, 357 Mont. 215, 239 P.3d 121.

¶12    We have determined to decide this case pursuant to Section I, Paragraph 3(d), of our 1996 Internal Operating Rules, as amended in 2006, that provide for memorandum opinions. It is manifest on the face of the briefs and the record before us that substantial evidence supports the District Court's findings of fact and that the District Court did not abuse its discretion.

¶13    We affirm.

/S/ BRIAN MORRIS

We Concur:

/S/ PATRICIA COTTER
/S/ MICHAEL E WHEAT
/S/ JAMES C. NELSON
/S/ JIM RICE